U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED - LAKE CHARLES

SEP 17 2007

ROBERT H. SHEMWELL, CLERK
BY _____ DEPUTY

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAKE CHARLES DIVISION

| | | |
|---|---|---|
| DORÉ ENERGY CORPORATION | : | DOCKET NO. 2:05 CV 1657 |
| VS. | : | JUDGE MINALDI |
| THE PROSPECTIVE INVESTMENT & TRADING COMPANY, LTD. And ATLANTIC AND GULF PETROLEUM COMPANY | : | MAGISTRATE JUDGE WILSON |

## MEMORANDUM RULING

Before the court is lessor plaintiff Doré Energy Corporation's Motion for Partial Summary Judgment,[1] and lessee defendants' Prospective Investment & Trading Co., Ltd. ("Prospective") and Atlantic and Gulf Petroleum Co.'s ("the defendants") Cross-Motion for Summary Judgment.

## FACTS

This suit arises out of a dispute over the enforcement of a Settlement Agreement pertaining to a mineral lease that the current parties properly executed in 2002. In 1927, Cameron Meadows Land Company and H.M. Henshaw executed a mineral lease ("the Lease") on land located in Cameron Parish, Louisiana.[2] In 1995, Doré purchased land in Cameron Parish from the Cameron

---

[1] Doré reserves for trial the issues of accounting for the minerals taken from the defendants from January 28, 2005, as well as reimbursement for attorney fees under La. Rev. Stat. Ann. § 31:207 & 209.

[2] Def.'s Statement of Uncontested Material Fact ¶ 1; Pl.'s Statement of Undisputed Facts ¶ 2.

1

Meadows Land Company that included Sections 21, 27, 28 of Township 14 South, Range 13 West, thus becoming Cameron Meadows' successor-in-interest.[3] In 1999, Prospective acquired interest as a lessee under the Lease, and is the operator on record.[4]

In 2000, Doré filed suit against Prospective in Cameron Parish requesting cancellation of the lease for failure to properly explore and develop a portion of the property, which was subsequently removed to federal court.[5] In 2002, the parties entered into a Settlement Agreement resolving the 2000 lawsuit, which released certain acreage of the lease.[6] The enforcement of this Settlement Agreement is at the crux of the present lawsuit.

Paragraph 10 of the Settlement Agreement provides that:

> PITCO and Atlantic agree to execute a Partial Release of the Cameron Meadows Lease covering the Disputed Area,[7] except for Sections 21, 27, and 28, where the Partial Release will be limited to all depths below 10,500'. The Cameron Meadows Lease will remain in effect down to 10,500' in Sections 21, 27, and 28 (the "Retained Area").[8]

Paragraph 11 of the Settlement Agreement provides that:

> PITCO and Atlantic agree: To execute a Partial Release (i) as to all acreage within the Retained Area which is not at that time in producing units three years from the effective date of this Agreement; and (ii) as to all depths below the deepest producing horizon as of three years from the effective date of this

---

[3] Def.'s Statement of Uncontested Material Fact ¶ 2; Pl.'s Statement of Undisputed Facts ¶ 1.

[4] Def.'s Statement of Uncontested Material Fact ¶ 3; Pl.'s Statement of Undisputed Facts ¶ 3.

[5] Def.'s Statement of Uncontested Material Fact ¶ 9; Pl.'s Statement of Undisputed Facts ¶ 4.

[6] Def.'s Statement of Uncontested Material Fact ¶ 10; Pl.'s Statement of Undisputed Facts ¶ 5; Pl.'s Ex. 4.

[7] The "disputed area" is that portion of the leased premises lying outside of Section 22. Settlement Agreement ¶ 9.

[8] *Id.* ¶ 10.

> Agreement. Doré and PITCO, shall, in good faith, attempt to negotiate the size and extent of such producing unit or units before instituting a proceeding before the Louisiana Commissioner of Conservation. Doré, PITCO and Atlantic agree that under no circumstances shall any unit around any producing well bore in the Retained Area be less than 160 acres.[9]

Thus, the defendants agreed to release the retained portions of the lease that were not in "producing units" after three years from the execution of the Settlement Agreement.

In the three year grace period, neither defendant sought to create units in the established area with the Louisiana Commissioner of Conservation or by voluntary agreement.[10] On the third anniversary of the Settlement Agreement, there was only one producing unit in the Released Area–the Planulina 1 Sand, Reservoir A, which was established by the Office of Conservation Order No. 202-GG on January 24, 1986.[11]

## SUMMARY JUDGMENT STANDARD

A court should grant a motion for summary judgment when the file, including the opposing party's affidavits, demonstrates that "there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). The Federal Rules also permit a court to issue summary judgment on a portion of a plaintiff's claim, including a grant of summary judgment on the issue of liability even if there exists a genuine issue as to the amount of damages. FED. R. CIV. P. 56(a) & (c). Thus, this

---

[9] *Id.* ¶ 11. All parties agree that the third anniversary of the Settlement Agreement occurred on January 28, 2005. Def.'s Statement of Uncontested Material Fact ¶ 25; Pl.'s Statement of Undisputed Facts ¶ 8.

[10] Pl.'s Memo. in Opposition to Def.'s Cross-Mot. for Summary Judgment 7.

[11] Pl.'s Ex. SJ6 (Aff. of Patti Reed).

3

Court may properly rule on Doré's Motion for Partial Summary Judgment on the issue of liability and reserve for trial the issue of damages and attorney fees.

The party moving for summary judgment is initially responsible for demonstrating the reasons justifying the motion for summary judgement by identifying portions of pleadings and discovery that demonstrate the lack of a genuine issue of material fact for trial. *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995). The court must deny the moving party's motion for summary judgment if the movant fails to meet this burden. *Id.*

If the movant satisfies this burden, however, the nonmoving party must "designate specific facts showing that there is a genuine issue for trial." *Id.* In evaluating motions for summary judgment, the court must view all facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1975). There is no genuine issue for trial, and thus a grant of summary judgment is warranted, when the record as a whole "could not lead a rational finder of fact to find for the non-moving party...." *Id.*

## ANALYSIS

A settlement agreement is the law between parties, and such agreements must be construed according to the parties' intent using principles of contract interpretation. *Ortego v. State, Dept. of Transp. and Dev.*, 96-C-1322 (La. 2/25/97); 689 So.2d 1358, 1363. When contractual terms are clear and do not lead to absurd consequences, a court should give effect to the terms of the contract and should not perform additional interpretation. *Big "D" Dirt Services, Inc. v. Westwood, Inc.*, 94-1234 (La. App. 3 Cir. 3/1/95); 653 So.2d 604, 607. Courts must interpret a contract to determine the parties' intent without rendering any part of the instrument meaningless. *Massie v. Inexco Oil Co.*, 798 F.2d 777, 789 (W.D. La. 1986). If contractual language is clear, parol and extrinsic

evidence is inadmissible to demonstrate the intent of the parties. La. Civ. Code Ann. art. 2046. If contractual terms are not ambiguous, the language may be interpreted as a matter of law, and thus summary judgment is appropriate. *Brown v. Drillers, Inc.*, 93-1019 (La. 1/14/94); 630 So.2d 741, 750.

When a contract pertains to a technical matter, "[w]ords of art and technical terms must be given their technical meaning...." La. Civ. Code Ann. art. 2047. In the context of an oil and gas lease, to give a word its "technical meaning" means that the court interprets it "as generally understood by professionals in the oil and gas industry." *Sloane v. Davis*, No. 92-31 (La. App. 3 Cir. 4/21/93); 619 So.2d 585, 589. When it is clear that oil and gas professionals would generally understand a term in the same fashion, parol evidence is inadmissible to clarify that term's meaning. *Louisiana Exploration & Co. v. Unocal Corp.*, 1994 WL 495794 *2 (E.D. La.) (Not reported in Fed. Supp.).

This case turns on the meaning of "producing unit" contained in the parties' Settlement Agreement. The term "producing unit" has a technical meaning in Louisiana. "Producing" means the actual production of minerals in paying quantities. *Menoah Petroleum, Inc. v. McKinney*, No. 20538-VSA (La. App. 2 Cir. 6/14/1989); 545 So.2d 1216, 1219. A "unit" is

> [A]n area of land, deposit, or deposits of minerals, stratum or strata, or pool or pools, or a part of parts thereof, as to which parties with interests therein are bound to share minerals produced on a specified basis and as to which those having the right to conduct drilling or mining operations therein are bound to share investment and operating costs on a specified basis.

La. Rev. Stat. Ann. § 31:213(6). Units may be formed "by convention or by order of an agency of the state or federal government empowered to do so." *Id.*; *see also Sun Exploration and Prod. v. J.D. Rogers*, 451 So.2d 587, 591 (La. App. 2 Cir. 1984); and *Odum v. Union Producing Co.*, 129 So.2d

530, 535-36 (La. App. 2 Cir. 1961). There are two types of voluntary units–those created by contract and those created by pooling agreement, authorized pursuant to contract. *See Humble Oil & Refining Co. v. Jones*, 157 So.2d 110, 113 (Tate, J., dissenting).

The parties' Settlement Agreement is clear and unambiguous. This court also finds that Louisiana law clearly defines "producing unit" as an area of land formed voluntarily or with the Louisiana Department of Conservation that produces minerals in paying quantities. Accordingly, this court will not admit extrinsic evidence to demonstrate the parties' intent in drafting the Settlement Agreement. Thus, the plain language of the Settlement Agreement requires the defendants to release all acreage within the Retained Area that was not in "producing units" by January 28, 2005.

This court rejects the defendants' argument that the Settlement Agreement automatically creates units of 160 acres around each producing well. The plain language of the Settlement Agreement required the defendants to establish producing units, not producing wells. Furthermore, the Settlement Agreement required the parties to negotiate the size of each producing unit created, with the stipulation that each unit created shall be at least 160 acres in size.

Doré has demonstrated through its Affidavit of landman and title abstractor Patti Reed that only one producing unit existed in the Released Area as of January 28, 2005. Ms. Reed researched the Office of Conservation unit orders and an abstract prepared by Hebert Abstract Company to determine the number of units on the Released Area. Ms. Reed then located all producing wells associated with the established units. She concluded that Planulina 1 Sand Reservoir A Unit was the only remaining producing unit. The defendants introduced the affidavit of Prospective's President, Adam C. Singer, who stated that there were twenty-five producing wells on January 28, 2005. Mr. Singer also stated that there were twenty-five units that were established by the

Department of Conservation prior to January 28, 2002. The defendants, however, fail to present adequate summary judgment evidence that disputes Doré's evidence that Planulina 1 Sand Reservoir A Unit was the only producing unit on January 28, 2005.

For the reasons stated in this Memorandum Ruling,

IT IS ORDERED that the Plaintiff's Motion for Partial Summary Judgment filed on behalf of Doré Energy Corporation is hereby GRANTED.

Lake Charles, Louisiana, this __12__ day of __Sept__, 2007

PATRICIA MINALDI
UNITED STATES DISTRICT JUDGE