RECEIVED
IN LAKE CHARLES, LA.

SEP 27 2010

TONY R. MOORE, CLERK
BY_____ DEPUTY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | | |
|---|---|---|
| DORÉ ENERGY CORPORATION | : | DOCKET NO. 2:05 cv 1657 |
| vs. | : | JUDGE MINALDI |
| THE PROSPECTIVE INVESTMENT & TRADING COMPANY, LTD. and ATLANTIC AND GULF PETROLEUM COMPANY | : | MAGISTRATE JUDGE KAY |

## MEMORANDUM RULING

Before the court is lessee defendants', Prospective Investment & Trading Co. ("Prospective") and Atlantic and Gulf Petroleum Co.'s ("the defendants"), Motion to Allocate Payment of the Special Master's Fees and Expenses to the Plaintiff [doc. 243]. Alternatively, the defendants move to treat the special master's fees and expenses as costs of the appeal. The lessor plaintiff Doré Energy Corporation ("Doré") filed an Opposition [doc. 249], and the defendants filed a Reply [doc. 251].

## FACTS

This suit arises out of a dispute over the enforcement of a Settlement Agreement pertaining to a mineral lease that the current parties properly executed in 2002. In 1927, Cameron Meadows Land Company and H.M. Henshaw executed a mineral lease ("the Lease") on land located in Cameron Parish, Louisiana.[1] Initially, the lease covered 11,540 acres. The lease now covers, at the most, three square miles (1,920 acres). In 1995, Doré purchased land in Cameron Parish from the Cameron Meadows Land Company that included three sections of land,

---

[1] Def.'s Statement of Uncontested Material Fact ¶ 1; Pl.'s Statement of Undisputed Facts ¶ 2.

1

sections 21, 27, 28 of Township 14 South, Range 13 West, thus becoming Cameron Meadows' successor-in-interest.[2] In 1999, Prospective acquired interest as a lessee under the Lease, and is the operator on record.[3]

In 2000, Doré filed suit against Prospective in Cameron Parish requesting cancellation of the lease for failure to properly explore and develop a portion of the property, which was later removed to federal court.[4] In 2002, the parties entered into a Settlement Agreement resolving the 2000 lawsuit, which released certain acreage of the lease.[5] The enforcement of this Settlement Agreement is at the crux of the present lawsuit.

Paragraph 10 of the Settlement Agreement provides that:

> PITCO and Atlantic agree to execute a Partial Release of the Cameron Meadows Lease covering the Disputed Area,[6] except for Sections 21, 27, and 28, where the Partial Release will be limited to all depths below 10,500'. The Cameron Meadows Lease will remain in effect down to 10,500' in Sections 21, 27, and 28 (the "Retained Area").[7]

Paragraph 11 of the Settlement Agreement provides that:

> PITCO and Atlantic agree: To execute a Partial Release (i) as to all acreage within the Retained Area which is not at that time in producing units three years from the effective date of this Agreement; and (ii) as to all depths below the deepest producing horizon as of three years from the effective date of this Agreement. Doré and PITCO, shall, in good faith, attempt to negotiate the size and extent of such producing unit or units before

---

[2] Def.'s Statement of Uncontested Material Fact ¶ 2; Pl.'s Statement of Undisputed Facts ¶ 1.

[3] Def.'s Statement of Uncontested Material Fact ¶ 3; Pl.'s Statement of Undisputed Facts ¶ 3.

[4] Def.'s Statement of Uncontested Material Fact ¶ 9; Pl.'s Statement of Undisputed Facts ¶ 4.

[5] Def.'s Statement of Uncontested Material Fact ¶ 10; Pl.'s Statement of Undisputed Facts ¶ 5; Pl.'s Ex. 4.

[6] The "disputed area" is that portion of the leased premises lying outside of Section 22. Settlement Agreement ¶ 9.

[7] *Id.* ¶ 10.

2

> instituting a proceeding before the Louisiana Commissioner of Conservation. Doré, PITCO and Atlantic agree that under no circumstances shall any unit around any producing well bore in the Retained Area be less than 160 acres.[8]

Thus, the defendants agreed to release the retained portions of the lease that were not in "producing units" after three years from the execution of the Settlement Agreement.

In March 2005, Doré sent letters to the defendants demanding that they surrender the lease as to all acreage that was not in producing units, including the 24 units that were still producing but not from unit-designated depths. The lease owners refused. They offered to negotiate with Doré to establish the shape and configuration of units around the producing wells. Rather than negotiate, Doré filed a suit in Louisiana state court in September of 2005, seeking enforcement of 2002 settlement agreement. After the defendants removed the case to Federal court and the parties conducted discovery, Doré file a motion for partial summary judgment. The motion requested that this Court terminate the lease except for the one unit still producing from its unit-designated depth–the Planulina 1 Sand, Reservoir A.[9]

On September 17, 2007, this Court granted Doré's motion for partial summary judgment.[10] Interpreting Paragraph 11 of the 2002 settlement agreement, this Court held that "producing units" are (1) those units created either (a) voluntarily or (b) by the Louisiana Conservation Commission (if an agreement cannot be reached) that (2) "produce minerals in paying quantities." This Court found that the parties were required to obtain new unit designations for any unit that once had a well producing from one depth and was now, after re-

---

[8] *Id.* ¶ 11. All parties agree that the third anniversary of the Settlement Agreement occurred on January 28, 2005. Def.'s Statement of Uncontested Material Fact ¶ 25; Pl.'s Statement of Undisputed Facts ¶ 8.

[9] Pl.'s Mot. Summ. J. 2.

[10] Order Granting Mot. Summ. J. Sept. 17, 2007.

completion, producing at a different depth from the same well bore. Because the parties failed to create successor units by agreement or governmental order to reflect the new production depths, there was only one producing unit remaining on the lease on the third anniversary of the settlement agreement. As a result, this Court terminated the lease as to all of the Designated Area except for the 160 acres surrounding the Planulina 1 Sand, Reservoir A.[11]

After granting Doré's motion for partial summary judgment, this Court certified its ruling for interlocutory review. On December 19, 2007, Doré requested sequestration of all of the wells within the lands released by this Court's summary judgment order under Federal Rule of Civil Procedure 64. This Court denied that request and instead ordered Prospective to deposit net revenues into the registry of the Court.[12] Because of a disagreement as to "net revenues" from the wells, this Court issued an order appointing a Special Master for accounting claims that same day.[13] This Court appointed Mr. William Hise as Special Master on December 28, 2007.[14] As Special Master, Mr. Hise rendered an accounting to determine the net revenues of each well Prospective operated until the Circuit Court issued its opinion. During his duration as Special Master, Mr. Hise charged fees of $28,397.68.[15]

On May 28, 2009, the Fifth Circuit reversed this Court's opinion, and remanded the case back to this Court for further proceedings. *Doré Energy Corp v. Prospective Investment & Trading Co.*, 570 F.3d 219, 222 (5th Cir. 2009). According to the Fifth Circuit, the contract

---

[11] *Id.*

[12] Order Denying Pl.'s Mot. to Sequester Dec. 19, 2007.

[13] *Id.*

[14] Order Appointing Special Master Dec. 28, 2007.

[15] Itemized Invoices of Special Master Nov. 17, 2009.

4

requires that Prospective release all lands outside of producing units. *Id.* To determine what land Prospective must release, the parties must determine units. *Id.* at 227-29. The parties must agree or, in the absence of an agreement, the Commissioner of Conservation must designate units. *Id.* at 228. Those units, moreover, must have produced minerals in paying quantities as of January 28, 2005. *Id.* In no event, however, will a unit be less than 160 acres surrounding a producing well bore. *Id.*

On remand, this Court must determine (1) whether the settlement agreement was breached by "a failure to [to begin negotiations to reform producing units] within a reasonable time, and if so (2) whether the lease owners alone are responsible" for this breach. *Id.* at 230. While a finding of a breach will not result in forfeiture of the leased land, this Court is required upon remand to determine the best means to ultimately enforce the obligation to form new units under the settlement agreement. *Id.* at 232.

The Fifth Circuit awarded costs to the appellant, Prospective. *Id.* Prospective now seeks allocation of fees and expenses of the special master appointed by this Court or alternatively, to have these fees and expenses treated as costs of the appeal. [16]

## ANALYSIS

Prospective first contends that it is entitled to the costs of the special master because it prevailed on its appeal. Accordingly, it claims that it is the "prevailing party" and is entitled to costs under Federal Rule of Civil Procedure 54(d). Doré, in reply, argues that Prospective is not the prevailing party for purposes of Rule 54(d) because the case has not been fully adjudicated.

Next, Prospective contends that because they are entitled to the costs of the appeal, the special master's fees and costs should be taxed against Doré under Federal Rule of Appellate

---

[16] Def. Mot. for Allocation of Costs of Special Master 3.

Procedure 39(a). Prospective, in other words, argues that it deposited money into the registry of the court in lieu of a bond. Because the special masters fees are costs associated with the cost of the deposit, it is entitled those costs under Rule 39(a)(3). The issue, therefore, is whether (1) Prospective is the prevailing party under Federal Rule of Civil Procedure 54(d)(1) even though the suit is still pending, and (2) whether the fees and expenses of the special master are premiums paid for a bond to preserve a right pending appeal under Federal Rule of Appellate Procedure 39(a)(3).

**Costs to "Prevailing Party"**

Prospective contends that it is entitled to the costs of the Special Master under Federal Rule of Civil Procedure 54(d)(1). Rule 54(d)(1) provides, in relevant part, that: "[u]nless a federal statute, these rules, or a court order provides otherwise, costs–other than attorney's fees–should be allowed to the prevailing party." Included in the costs allowed to the prevailing party under 28 U.S.C. 1920 are special master's fees.[17] *Carpa, Inc. v. Ward Foods, Inc.*, 567 F.3d 1316, 1324 (5th Cir. 1978). Although a master's fees and expenses are ordinarily taxed against the losing party, this Court has broad discretion in determining which party or parties shall bear the costs of reference to a master. *Id.*

"A determination of who is the prevailing party for purposes of awarding costs should not depend on the position of the parties at each stage of the litigation but should be made when the controversy is finally decided." 10 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure*, § 2667 (3d. Ed. 2007). As the Fifth Circuit has held, a prevailing party is one

---

[17] This case is called into question by the later Supreme Court decision in *Crawford Fitting Co. V. J.T. Gibbons, Inc.*, 482 U.S. 437, 441-43 (1987) (holding that only fees that fall into one of the categories of costs statutorily authorized for reimbursement are compensable under 54(d)). As a result, the issue may not fall under Rule 54 but Rule 53(d).

6

who prevails at the time of final judgment, not the party who has prevailed in a "single round." *Rodriguez v. Handy*, 873 F.2d 814, 817 (5th Cir. 1989); *see also Barber v. T.D. Williamson, Inc.*, 254 F.3d 1223, 1234 (10th Cir. 2001) (noting that a party prevails if judgment is entered in its favor); *Head v. Medford*, 62 F.3d 351, 354 (11th Cir. 1995) ("Usually the litigant in whose favor judgment is rendered is the prevailing party for purposes of Rule 54(d)"); *Three-Seventy Leasing Corp. v. Ampex Corp.*, 528 F.2d 993, 998-99 (5th Cir. 1976) (reversing a district court's award of costs to the defendant where the plaintiff won its breach of contract claim and was entitled to an award of nominal damages). Therefore, a party is not entitled to fees under Rule 54(d)(1) by merely prevailing at one stage of litigation without ultimately prevailing in the case.

Here, the Fifth Circuit remanded the case back to this Court for further proceedings. *Doré*, F.2d at 230. Which party ultimately prevails will depend upon the enforcement of the Settlement Agreement. *Id.* Specifically, the identity of the "prevailing party" will depend upon (1) whether the lease expired and how much land must be released, (2) which party bore responsibility for initiating negotiations and proceedings for new unit designations, and (3) whether that party violated the Settlement Agreement by failing to institute negotiations within a reasonable amount of time. *Id.* Until a final judgment, there can be no prevailing party. *See Rodriguez*, 873 F.2d at 817. Thus, Prospective is not entitled to the costs of the special master under Rule 54(d).

**Taxing Costs as Premiums Paid for a Supersedeas Bond**

Next, Prospective argues that this Court must tax the costs of the special master as premiums paid for a bond to preserve rights pending appeal under Federal Rule of Appellate Procedure 39(a)(3). Under Rule 39(a), "if a judgment is reversed, costs shall be taxed against the appellee." Fed. R. App. P. 39(a)

Under Rule 39(e), moreover, certain costs of appeal "shall be taxed in the district court," such as "premiums paid for a supersedeas bond or other bond to preserve rights pending appeal." *Id.* District courts are required to assess these costs when Rule 39(a) requires the party seeking remuneration to recover them. Unlike Federal Rule of Civil Procedure 54(d)(1), these costs are assessed whether or not the party ultimately prevails at trial. *Id.* Whether taxed in the appeals court or this court, the prevailing party can recover no costs unless specifically provided in Rule 39(e). *Id.; see also Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 444-45 (1987) (limiting the assessment of costs to those specifically authorized by law). Thus, the issues are (1) whether the money Prospective deposited into the Registry of the Court are the same as a bond to preserve rights pending appeal, and if so (2) whether the costs of the special master are premiums paid for that bond.

While at least one court has held that a party may recover the costs of securing a judgment if they are paid for securing a final judgment "in lieu" of a bond, such a recovery is only allowed in exceptional circumstances. *Trans World Airlines, Inc. v. Hughes*, 515 F.2d 173, 177-78 (2d Cir. 1975); *Republic Tobacco Co. v. North Atlantic Trading Co.*, 481 F.3d 442, 448 (7th Cir. 2005) (holding that costs of a letter of credit to secure a final decision of the district court pending appeal as costs recoverable for "premiums paid for a supersedeas bond"). In *Trans World Airlines*, for instance, the defendant obtained a $75 million letter of credit and incurred other expenses "in lieu" of a supersedeas bond pending its ultimately successful appeal of a $145 million default judgment rendered by the district court in favor of the plaintiff. 515 F.2d 173, 177-78. The Second Circuit found that the costs of those expenses were taxable against the plaintiffs as costs of the appeal under Rule 39(a)(3). *Id.* Those costs were taxable against the plaintiff, according to the court, for three reasons: (1) the letter of credit served the same purpose

as a supersedeas bond; (2) the letter of credit and other arrangements were less expensive than a supersedeas bond; and (3) the plaintiff and the district court approved the arrangement. *Id.*; *see also Lerman v. Flynt Distributing Co.*, 789 F.2d 164, 166 (2d Cir. 1986).

Federal Rule of Appellate Procedure 37(e) limits the costs taxable in the District Court are limited to "premiums paid for a *supersedeas bond or other bond* to preserve rights pending appeal." Fed. R App. P. 37(e) (emphasis added). Only when the court requires a bond to secure a final judgment are costs "in lieu" of a supersedeas bond recoverable under Rule 37(e). *See Lerman*, 789 F.2d at 166. The rule thus contemplates a final, appealable decision where a bond would be necessary to appeal that decision. *Id.*; *see also Republic Tobacco Co.*, 481 F.3d at 448; *Trans World Airlines*, 515 F.2d at 177-78.

The revenues Prospective deposited into the registry of the court were not paid "in lieu" of a bond. Federal Rule of Civil Procedure 62(h) provides the district court discretion to determine what security, if any, is necessary to the stay enforcement of a final judgment rendered under Rule 54(b). Fed. R. Civ. P. 62(h). Here, the court did not require any security to enforce its certified judgment. Instead, this Court required security to enforce a future judgment of damages under Federal Rule of Civil Procedure 64.[18]

Under Rule 64, the district court may seize property to secure satisfaction of the potential judgment. Although this Court required a release of all land surrounding the wells that were not producing from pre-designated units in its summary judgment motion, it had not determined damages. To secure a potential future judgment of damages, Doré moved this Court to sequester the released wells. Prospective challenged the Rule 64 motion, but appeared amenable to

---

[18] Order Denying Pl.'s Mot. to Sequester Dec. 19, 2007.

9

depositing revenues into the registry of court as long as the parties could agree on the determination of net revenues.[19]

After Prospective successfully challenged Doré's motion to sequester the wells, this Court appointed a special master to resolve the dispute over net revenues and required Prospective to deposit those revenues into the registry of the court.[20] Prospective, therefore, deposited those funds to secure satisfaction of a potential judgment; it did not deposit the funds "in lieu" of an appellate bond. *See* Fed. R. App. P. 37(e). As a result, the deposited funds and special masters fees bear no relation to costs of a bond to secure a final judgment pending appeal under 37(e).

Because Rule 37(e) and Rule 54(d) are inapplicable, the fees and expenses of the special master are governed by Rule 53(g). Under Rule 53(g), "[t]he court must allocate payment [of the master's fees] among the parties after considering the nature and amount of the controversy, the parties' means, and the extent to which any party is more responsible than the other parties for the reference to a master." Fed. R. Civ. P. 53(g).

Where reference to the master is on the court's own motion and the master's work benefits both sides as well as the court, it is reasonable to apportion cost of the master's service on an equal basis. *Carter v. Shop Rite Foods, Inc.*, 503 F. Supp. 680, 691 (N.D. Tex. 1980) (interpreting Federal Rule of Civil Procedure 53(a), the predecessor to Rule 53(g)). In *Carter*, for example, the court apportioned master's fees equally among the parties when a number of disputed items were presented to the special master, despite plaintiffs' ultimately successful suit.

---

[19] Sequestration Hr'g Tr. 38:1-5 Jan. 19, 2007.

[20] Order Denying Pl.'s Mot. to Sequester Dec. 19, 2007.

*Id.* (finding, however, that despite ultimately prevailing in the suit, the plaintiffs did not prevail on all issues directed to the special master). The court apportioned the costs of the special master on an equal basis, in part, because the master's work benefitted both sides as well as the court. *Id.* Thus, apportioning special master's fees equally among the parties is appropriate when the court and all parties benefit from the reference to the special master. *Id.*

Here, like the parties in *Carter*, both Doré and Prospective benefitted from the appointment of a special master to determine net revenues. *Id.* Indeed, appointment of a special master was necessary because both parties vigorously disputed net revenues. While Prospective may have opposed depositing funds into the registry of the court, both parties agreed to submit the issue of revenues to a special master under the circumstances. The parties, therefore, both sought reference to a special master. Furthermore, unlike the plaintiffs in *Carter*, Prospective is not the ultimately prevailing party; thus, Rule 54(d) does not direct this Court to allocate costs of the special master to Doré. *Id.* After considering all of the factors listed in 53(g), costs of the special master are apportioned equally among the parties, as each party is equally responsible for the reference to the master. Thus, taxing the total costs of the special master to the Plaintiff, Doré, before the final disposition of the litigation is inappropriate under Rule 53(g). This Court reserves the right to reexamine and reallocate this payment upon final judgment in the event that one party can actually be classified as the prevailing party.

IT IS ORDERED that Prospective's Motion to Motion to Allocate Payment of the Special Master's Fees and Expenses to the Plaintiff, Doré [doc. 243], is hereby DENIED.

Lake Charles, Louisiana, this *15* day of September, 2010.

_____
PATRICIA MINALDI
UNITED STATES DISTRICT JUDGE